UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CHARLES JOHNSON ET AL**            **CASE NO. 3:22-CV-00828**

**VERSUS**                           **JUDGE TERRY A. DOUGHTY**

**CITY OF MONROE ET AL**             **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 58] filed by Defendants, City of Monroe, Mayor Friday Ellis, Police Chief Victor Zordan, and Sergeant Mike Fendall (collectively, "Defendants"). Plaintiffs Charles and Mallory Johnson ("Johnson" or "Plaintiffs") oppose the motion [Doc. No. 70]. Defendants have filed a reply [Doc. No. 80] to the opposition.

For the following reasons, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed this Section 1983 action on November 23, 2020, alleging that Johnson was discharged from his employment with the Monroe Police Department ("MPD") in violation of his Fifth and Fourteenth Amendments Rights.[1] Johnson's wife Mallory is asserting a loss of consortium claim. The claim centers on allegations that there was a delay of the sending of an excessive force case to the Louisiana State Police ("LSP") prior to the City of Monroe Mayoral election on July 11, 2020.[2]

Defendants argue in their motion that Johnson was terminated for repeatedly lying and for failing a polygraph exam during an investigation into whether Johnson intentionally delayed

---

[1] [Doc. No. 1-1]
[2] [Id.]

1

reporting a police brutality criminal investigation to influence a mayoral election.[3] They assert, more specifically, that there was concern that Johnson knew of the existence of a serious criminal act, and the City Attorney recommended that Johnson refer the investigation to the Louisiana State Police ("LSP"), but Johnson waited because he allegedly wanted to influence the outcome of the upcoming Monroe mayoral election.[4] Johnson appealed the termination to the Monroe Fire and Police Civil Service Board (the "Board").[5] A hearing was held, and the Board found that Johnson violated policy and that the City had cause to terminate him.[6]

The City of Monroe, as a municipality of the state of Louisiana, is within a classified civil service that protects its employees, such as Johnson, from disciplinary action absent certain circumstances.[7] If a "classified employee" is removed (terminated) from the City then that employee can demand a hearing and investigation by the Board, who then determines the reasonableness of the action.[8] If a classified employee does challenge an action, then the Board retains control of the action and resolves it by way of a hearing and an investigation.[9] The Board can either affirm the City's decision, or, if it determines that an action was not taken in good faith or for cause, then the Board must order immediate reinstatement or reemployment.[10] Alternatively, the Board can modify an action, and the City must enforce any decision of the Board.[11]

Johnson's disciplinary action occurred after a July 6, 2020, excessive force complaint filed by Timothy Williams ("Williams").[12] Defendants argue that Johnson was informed that the

---

[3] [Doc. No. 58-1]
[4] [Id.]
[5] [Id.]
[6] [Id.]
[7] La. Rev. Stat. 33 § 2475, La. R.S. § 33:2500.
[8] La. R.S. § 33:2501(A).
[9] [Id.]
[10] [Id.]
[11] [Id.]
[12] [Doc. No. 58-1]

2

complaint was a criminal matter that should be referred to the LSP.[13] Defendants also argue that the complaint was not immediately referred to the LSP, and that Johnson waited until July 13, 2020, to contact the LSP about the incident.[14] According to Hank Smith ("Smith"), a LSP investigator, Johnson told him that he did not contact the LSP until July 13 because he did not want to "ruin anybody's weekend."[15] The weekend in question was the mayoral election, and Defendants assert that the City had cause to believe that Johnson intentionally delayed the reporting of the complaint in an effort to influence the election results.[16]

On September 4, 2020, an investigation ensued.[17] The investigation began with a letter to Johnson informing him about the investigation into possible misconduct; it also stated that the investigation would cover all aspects of his knowledge and handing of the Williams' complaint.[18] Johnson was advised that he could have a lawyer present during the investigation interview.[19]

On October 8, 2020, Johnson, who had his lawyer present, was questioned about his role in the Williams' matter.[20] Due to inconsistent answering, Johnson was again questioned on October 12, 2020, via polygraph.[21] During both of these questionings, Johnson was read the Police Officers' Bill of Rights. He also voluntarily executed a written consent to take the polygraph. He was asked questions related to whether he discussed with anyone delaying sending the Williams' case to the LSP because of the mayoral election; whether he was ordered to delay sending the Williams' case to the LSP because of the mayoral election; and whether he delayed sending the

---

[13] [Id.]
[14] [Id.]
[15] [Id., p. 9, Doc. No. 58-5]
[16] [Doc. No. 58-1]
[17] [Doc. No. 58-5]
[18] [Doc. Nos. 58-1, 58-5]
[19] [Id.]
[20] [Doc. No. 58-4]
[21] [Doc. No. 58-5]

Williams' case to the LSP before the mayoral election simply because he didn't want to send it.[22] He answered no to all of the questions.[23]

The Defendants assert that the polygraph examiner determined that Johnson's responses to each of the above questions were deceptive.[24] Johnson did admit that he told Smith that he after hearing from the City Attorney, he postponed contacting LSP.[25]

A pre-disciplinary hearing was held on November 4, 2020.[26] The hearing was conducted under oath, and Johnson was read the Police Officer's Bill of Rights. At the hearing, Johnson testified that he was given the polygraph questions in advance and that he understood the questions.[27] He also affirmed that he had reviewed the video of the polygraph, the examiner's report, and the written transcript.[28] Johnson was given the opportunity at this hearing to tell MPD why no disciplinary action should be taken.[29] Defendants allege that Johnson did not provide any valid information to justify no action.[30]

Johnson's employment with MPD was terminated on November 23, 2020, for failing a polygraph examination and delaying the Williams' complaint in an effort to influence the 2020 mayoral election.[31]

Johnson appealed to the Board, and a five-day hearing was held on the matter.[32] Johnson was represented by counsel at the hearing and presented evidence to support his reinstatement.[33]

---

[22] [Id.]
[23] [Id.]
[24] [Doc. No. 58-1]
[25] [Id.]
[26] [Doc. No. 58-8]
[27] [Doc. No. 58-1]
[28] [Id.]
[29] [Id.]
[30] [Id.]
[31] [Id.]
[32] [Doc. No. 58-5]
[33] [Id.]

4

Johnson admitted during the hearing that his story as it related to the Williams' complaint changed, that is to say, on October 8, 2020, he stated he was not ordered to call Bob Brown with LSP, on October 9, 2020, he stated that he was maybe ordered to call Bob Brown, and then on October 12, 2020, he stated that he was ordered to call Bob Brown but not until after the mayoral election.[34]

At the Board hearing, the polygraph examiner Cecil Carter ("Carter") testified as an expert and introduced two methods of grading polygraph exams.[35] Under both methods, Johnson's answers to the three aforementioned questions were deceptive.[36] Nathan Gordon ("Gordon") also testified as an expert and independently evaluated the polygraph exams on behalf of the City.[37] Gordon used three polygraph algorithms to "grade" Johnson's answers.[38] All three of these came back with a greater than 99% chance that Johnson's answers were deceptive.[39]

As previously mentioned, the Board considered the evidence presented and affirmed MDP's decision to terminate Johnson. Despite this, Johnson alleges that he was denied due process in violation of the Fifth and Fourteenth Amendments.[40] Johnson argues that he had "little or nothing to do with the [MPD]'s handling of the … incident," but that Johnson was merely a "scapegoat" in order for Mayor Ellis's administration to distance themselves from the actions taken during the Mayo administration.[41]

The issues are briefed, and the Court is prepared to rule.

---

[34] [Id.]
[35] [Id.]
[36] [Doc. No. 58-6]
[37] [Doc. No. 58-5]
[38] [Doc. No. 68-7]
[39] [Id.]
[40] [Doc. No. 1-1]
[41] [Doc. No. 60]

## II. LAW AND ANALYSIS

### A. Motion for Summary Judgment

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both

6

parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

**1. Official Capacity Claims Against Individual Defendants**

A suit against a municipal officer in his official capacity is simply another way of alleging municipal liability because a judgment in a § 1983 suit against an officer in his official capacity imposes liability against the entity he represents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014). Therefore, "[w]hen . . . the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them." *Ferguson v. Gates*, 602 F.Supp.3d 942, 950 (W.D. La. 2022) (quoted source omitted); *Lehman v. Guinn*, Civ. Action No. 20-0736, 2021 WL 935887, at *10 (W.D. La. Feb. 9, 2021), *R&R adopted*, 2021 WL 929885

(W.D. La. Mar. 10, 2021); *Faul v. Fontenot*, Civ. Action No. 19-1221, 2020 WL 4929358, at *3 (W.D. La. Aug. 4, 2020), *R&R adopted*, 2020 WL 4929323 (W.D. La. Aug. 21, 2020).

Plaintiffs here have named the City of Monroe as a defendant. The City of Monroe has instituted a "mayor-council" form of government. Under this, the elected mayor is the chief executive officer and head of the executive branch. Plaintiffs allege Mayor Ellis was acting on behalf of the City.

The claims Plaintiffs made against Mayor Ellis, Chief Zordan, and Michael Fendall are one in the same as those claims they made against the City. Therefore, the official capacity claims against Mayor Ellis, Chief Zordan, and Michael Fendall are **DISMISSED WITH PREJUDICE**.

### 2. Vicarious Liability Under 42 U.S.C. § 1983

Johnson alleges that Defendants violated his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.[42] A suit against a government official in his official capacity is the equivalent to a suit against the government entity of which the official is an agent. While municipalities can be sued directly under § 1983, *Monell* establishes that they "cannot be found liable on a theory of vicarious liability or respondeat superior." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, at 694 (1978). In other words, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *accord Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). To overcome summary judgment on a municipal liability claim, a plaintiff must therefore "demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by the municipal

---

[42] [Doc. No, 1-1]

policymaker (3) was the moving force behind the violation of a constitutional right." *Davis v. Tarrant County, Texas*, 565 F.3d 214, 227 (5th Cir. 2009).

Caselaw sets forth three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019).

Defendants assert that Plaintiffs are alleging no official policy of the City, so the Section 1983 liability rests upon the "final policymaking authority."[43] Plaintiffs oppose this, and they assert "Defendants' assertion that plaintiff alleges no official policy of the city and that section 1983 liability ensues upon a 'final policy making authority is misplaced.' Plaintiff entire claims commencing with paragraphs 3,4,5,7,9 details the policies that the City violated giving rise to Sgt Johnson' due process violations."[44] Plaintiffs claim that this creates a genuine issue of material fact and that Defendants are therefore not entitled to summary judgment on this issue.[45]

Defendants have correctly established that there is an absence of a genuine issue of material fact in the record because Plaintiffs have failed to specify any sort of official policy of the City. Although Plaintiffs assert that this argument is "misplaced", they have still failed to show the Court what official policy Defendants have violated here.

---

[43] [Doc. No. 38-1]
[44] [Doc. No. 70, p. 8-9]
[45] [Id.]

9

Federal courts have consistently held that liability does not attach to a municipality when disciplinary action is subject to administrative review before a civil service board. However, Johnson does not clearly state who he blames for his ultimate termination, and he only points his claims to Defendants for "intentionally infringing on his rights." It is undisputed that the Monroe Municipal Fire and Police Civil Service Board, not Defendants, is the final policy maker here. In *Advanced Technology Building Solutions, LLC v. City of Jackson, Mississippi*, 817 F.3d 163, 167 (5th Cir. 2016), the United States Court of Appeals for the Fifth Circuit reaffirmed the Circuit's previous holdings that "[r]eview procedures are relevant to show someone 'is *not* a final policymaker.'" In *Advance Technology*, the plaintiff brought an action under section 1983 against the City of Jackson, alleging the mayor retaliated against him for exercising his First Amendment rights. The court held the mayor was not the final policymaker for the purposes of section 1983 liability because the city council had the final right of review of the mayor's decisions.

In *Metzler v. Kenner City*, Civ. A. No. 15-910, 2016 WL 5901886 (E.D. La. Oct. 11, 2016), the Eastern District of Louisiana relied on both *Praprotnik* and *Advanced Technology* and found that the City of Kenner was not subject to liability. In *Metzel*, the plaintiff sued the City of Kenner alleging that the mayor infringed on his First and Fourteenth Amendment rights. In *Metzler*, local law provided an avenue to appeal termination decisions to a civil service board. Like Brown in this case, the plaintiff in *Metzler* appealed his termination. The court concluded that the city was not liable for the actions of officials because the existence of a meaningful review by the Civil Service Board indicated that the city officials were not final policymakers. The civil service board in *Metzler* was authorized to make rules regarding employment and to review adverse employment decisions, just as the Monroe Municipal Fire and Police Civil Service Board is here. The *Metzler* court granted summary judgment.

10

In the instant case, Johnson enjoyed a property interest in his continued employment by virtue of his tenured civil service employment. Employees entitled to civil service protection may be removed by the appointing authority only under certain circumstances. Those circumstances include:

> (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
>
> (2) The deliberate omission of any act that it was his duty to perform.
>
> (3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
>
> (4) Insubordination.
>
> (5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
>
> (9) Falsely making a statement of any material fact in his application for admission to any test for securing eligibility or appointment to any position in the classified service, or, practicing or attempting to practice fraud or deception in any test.
>
> (14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
>
> (15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.[46]

As previously mentioned, if and when a classified employee is removed from the City, then that employee may demand a hearing and investigation by the Board to determine the reasonableness of the action.[47] The Board has complete charge of any such hearing and investigation and may conduct it in any manner it deems advisable.[48] After an investigation, the Board can either affirm the City's decision, or, if it determines that an action was not taken in good

---

[46] La. R.S. § 33:2500.
[47] La. R.S. § 33:2501(A).
[48] La. R.S. § 33:2501(B)(3).

faith or for cause, then the Board must order immediate reinstatement or reemployment.[49] Alternatively, the Board can modify an action, and the City must enforce any decision of the Board.[50]

Johnson clearly availed himself of civil service protection by appealing his termination to the Board. The Board determined that there was just cause for Johnson's termination.

Defendants also argue that even if Johnson established that the individual Defendants made the decision to terminate him, this single decision would not make any of the individual Defendants a final policy maker or subject the City to liability because the Board provided meaningful review of the termination decision. To support this argument, Defendants state that the Board provided a five-day long hearing. During this process, Johnson testified, cross examined witnesses, and introduced evidence in an effort to overturn his termination. Johnson does not deny that his appeal was heard by the Board, which made the final decision regarding his employment.

The Court agrees with Defendants. At the outset, Plaintiffs have failed to identify a specific policy that Defendants have violated. Accordingly, the analysis falls on "final policymaking authority" for an action that "performs the specific act that forms the basis of the § 1983 claim." Johnson cannot establish his termination was done by Defendants acting as final policymakers. The Board provided meaningful review of the termination. He has not provided any evidence that the Board performed any acts that form the basis of this Section 1983 claim. Therefore, Plaintiffs' claims against the City are **DISMISSED WITH PREJUDICE**.

### 3. Qualified Immunity

Defendants argue that to the extent Plaintiffs assert any individual capacity claims against them, then the Defendants are entitled to qualified immunity.

---

[49] La. R.S. § 33:2501 (C)(1).
[50] [Id.]

The doctrine of qualified immunity insulates government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is permitted to go to trial, thus qualified immunity questions should be resolved through summary judgment when the underlying facts are not in dispute. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

As indicated by *Saucier v. Katz*, 533 U.S. 194, 200 (2001), in determining whether qualified immunity applies, the first inquiry is whether a constitutional right would have been violated on the facts alleged. Only after deciding that question may a court turn to the question whether the right at issue was clearly established at the relevant time. This procedure was subsequently altered to declare that *Saucier's* procedure should not be regarded as an inflexible requirement but noted the *Saucier* procedure is often beneficial. *Pearson v. Callahan*, 555 U.S. 223, 2279 (2009).

In this case, following the *Saucier* procedure is appropriate. This Court begins with the question of whether a constitutional right would be violated on the facts alleged. The Court has found that there was no constitutional violation in this case. However, it will still analyze whether the Defendants are entitled to qualified immunity if it were found that there was a constitutional violation here.

The inquiry requires analyzing the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This question is analyzed from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. Police officers are often

13

forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id*. at 396-397.

The Court can decide one question or both under *Saucier*.[51] The dispositive question is whether the violative nature of the particular conduct is clearly established. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). That is because qualified immunity is inappropriate only where the officer had "fair notice" in light of the specific context of the case, not as a broad general proposition, that his particular conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The burden of proof in a Section 1983 action is on the plaintiff. The burden is heavy. A right is "clearly established" only if relevant precedent has placed the constitutional questions beyond debate. *Ashcroft v al-Kidd*, 563 U.S. 731, 741 (2011).

Plaintiffs' Complaint makes no allegations toward Mayor Ellis or Mike Fendall in their individual capacities.

While Johnson's Complaint lacks any evidence of personal acts by Zordan that violated his constitutional rights, it is clear that Zordan alone made the decision to terminate Johnson. Defendants argue that even though he made this decision, he is still entitled to qualified immunity because his action was objectively reasonable.

The Court agrees with Defendants. Zordan's actions were reasonable. He followed all appropriate steps in his determination of what to do with Johnson. A police officer should, at least in the course and scope of his work as an officer, be honest and trustworthy. The nature of what Johnson was allegedly dishonest about was important in this case, i.e., not timely the investigating a case of police brutality. Zordan also allowed Johnson the opportunity to explain himself, and he

---

[51] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

14

did not make a determination as to his employment until after hearing Johnson's side of the story. Zordan did not partake in unlawful conduct, and his actions were that of a reasonable police officer.

Therefore, the Court finds that Zordan is entitled to qualified immunity against the procedural due process claim, and Plaintiffs' procedural due process claim is **DISMISSED WITH PREJUDICE.**

### 4. Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. Cty. of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993). "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adv., Inc. v. Regional Transit Auth.,* 489 F.3d 669, 673 n. 3 (5th Cir.2007) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)). Nonetheless, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Texas v. Walker,* 142 F.3d 813, 819 (5th Cir.1998) (citing *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 223–26 (1985)). The fact that "reasonable minds could disagree on the propriety of [the plaintiff]'s termination" is insufficient to defeat a public official's qualified immunity against a substantive due process claim. *Id.* Rather, the plaintiff must show that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 215 (5th Cir.1999) (quotation marks omitted). The plaintiff must "demonstrate that the abuse of power by the state official shocks the conscience." *Marco,* 489 F.3d at 673 n. 3

15

(quotation marks omitted) (finding award of advertising contract to bidder other than lowest did not "shock the conscience," and thus did not establish violation of substantive due process).

When the Court evaluates a substantive due process claim against a party such as MPD, it "must be given considerably more latitude in its decisions regarding discipline and personnel management than the ordinary government employer." *Dupree v. City of Monroe*, No. CV 15-0354, 2017 WL 427147, at *7 (W.D. La. Jan. 31, 2017). Accordingly, Johnson's constitutional challenges must be determined under a rational basis scrutiny because of his status as a police officer. This means that Defendants' conduct is unconstitutional if they "bear no rational relationship to a legitimate state interest." *Taylor v. City of Shreveport*, 798 F.3d 276, 280 (5th Cir. 2015) (quoting *Crain v. Bd. of Police Comm'rs of Metro. Police Dep't of City of St. Louis*, 920 F.2d 1402, 1407 (8th Cir. 1990).

Defendants first argue that they did not violate Johnson's Fifth Amendment Rights because Johnson does not claim that any of the officers are federal actors. Johnson conceded that the Defendants are all employees of the City. "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Ristow v. Hansen*, 719 F. App'x 359, 364 (5th Cir. 2018). The Court agrees with Defendants. Accordingly, Johnson's claim that Defendants violated his Fifth Amendment due process rights is **DISMISSED WITH PREJUDICE**.

Defendants further argue that they did not violate the Equal Protection Clause of the United States Constitution. The reach of substantive due process is limited and it protects against only the most serious of governmental wrongs. Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it

16

[does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, at 846-47 (1998).

Based on the facts presented, it is the Court's understanding that Plaintiffs allege that the Defendants' decision to conduct an internal investigation by use of a polygraph would be the action giving rise to egregious conduct. Defendants compare the use of the polygraph to a detective's investigative technique. This Court has previously held that detective's investigative techniques cannot be said to be "so brutal and so offensive to human dignity" that it "shocks the conscience." *Vicknair v. Louisiana Dep't of Wildlife & Fisheries*, No. CIV. 11-406, 2013 WL 1180834, at *14–15 (W.D. La. Jan. 29, 2013), *report and recommendation adopted,* No. CIV.A. 11-406, 2013 WL 1180876 (W.D. La. Mar. 20, 2013). The Louisiana Supreme Court has even held that officer polygraphs are admissible and competent evidence in civil service proceedings under certain circumstances. *Evans v. DeRidder Mun. Fire*, 2001-2466 (La. 4/3/02), 815 So. 2d 61, 66–68.[52]

Defendants argue that the polygraph exam supports a "legitimate interests in public safety."[53] In support of this, Defendants assert that Johnson admitted that failing a polygraph examination is a serious office. Specifically, they said that he answered affirmatively when asked whether being untruthful during an investigation and failing a polygraph exam may impair the efficient and effective operation of the MPD.[54]

According to Zordan, integrity and trustworthiness are of the utmost importance for the MPD. Specifically, Zordan testified that credibility is critical because when an officer is untruthful,

---

[52] Those circumstances include polygraphs that contain evidence that has a degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon during proceedings, such as a hearing.
[53] [Doc. No, 58-1]
[54] [Doc. No. 58-5]

17

it undermines the entire department and ultimately public safety. Untrustworthy officers undermine the MPD's goals and objectives of maintaining public safety and trust. Defendants assert, then, that it is reasonable to expect that a police officer will be truthful at all times. They further argue that it is reasonable to expect that a police officer will refer a complaint of gross misconduct for criminal referral as expeditiously as possible.

The Court finds that Johsnon cannot establish any acts by these Defendants that can be classified as arbitrary and capricious, and therefore, his substantive due process claim is **DISMISSED WITH PREJUDICE**.

    **5. Mallory Johnson's Loss of Consortium Claim**

Mallory Johnson joined this suit and makes a loss of consortium claim. The Court finds that this claim is not cognizable under Section 1983. Under Louisiana law, loss of consortium damages are derivative claims arising from a successful state law tort claim brought by a spouse. *Barras v. Garber*, Civ. A. No. 6:19-01411, 2020 WL 5755184, at *6 (W.D. La. Sept. 25, 2020). Mallory Johnson's damage claim is inapplicable here because Johnson has not asserted a state law tort claim. Additionally, the Fifth Circuit has held that a third party "may not assert a civil rights claim based on the civil rights violations of another individual." *Id.*; citing *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Circuit 1986)). While *Barker* was not a section 1983 case, *Coon* was a section 1983 case.

Because this claim is improperly before the Court, Mallory Johnson's loss of consortium claim is **DENIED WITH PREJUDICE**.

    **I.    CONCLUSION**

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants, City of Monroe, Mayor Friday Ellis, Police Chief Victor Zordan, and Sergeant Mike Fendall's Motion for Summary Judgment [Doc. No. 58] is **GRANTED**. Plaintiffs Charles and Mallory Johnson's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 14th day of November 2023.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE